\*\* <u>FOR PUBLICATION</u> \*\*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                                                  :
UNITED STATES OF AMERICA, ex rel,    :
and FLFMC, LLC,                                      :
                                                                  :
                               Plaintiff,            :          Civil Action No. 10-cv-5477
                                                                  :
           v.                                                    :          **OPINION**
                                                                  :
TFH PUBLICATIONS, INC.,                     :
                                                                  :
                               Defendants.       :
                                                                  :
_____  :

**<u>WOLFSON, United States District Judge:</u>**

Presently before the Court is a Motion to Dismiss for failure to state a claim or, in the alternative, for lack of subject matter jurisdiction filed by Defendants TFH Publications, Inc. ("Defendant" or "TFH"). Defendant seeks to dismiss Plaintiff FLFMC, LLC's ("Plaintiff's" or "FLFMC's") <u>qui</u> <u>tam</u> complaint alleging two violations of the False Marking Statute, 35 U.S.C. § 292. Also pending is a motion to enforce settlement filed by Plaintiff. For the reasons explained herein, this Court has been stripped of jurisdiction to hear this action by virtue of the Leahy-Smith America Invests Act, Pub.L. No. 112–29, 112th Cong. (1st Sess. 2011) ("Leahy-Smith Act" or "The Act"), which amends the False Marking Statute. Accordingly, Defendant's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is granted. Because the Court concludes that it lacks jurisdiction over the suit, the Court does not rule upon Defendant's motion to dismiss for failure to state a claim or upon Plaintiff's motion to enforce settlement. As this Court does not reach the merits of Plaintiff's motion, Plaintiff may seek

1

enforcement in state court of what appears to be a valid settlement agreement reached by the parties prior to the effective date of the Leahy-Smith Act.

**I.     BACKGROUND**

Plaintiff FLFMC brings this False Marking Statute qui tam action on behalf of itself and in the name of the United States.  Compl., ¶ 1.[1]  TFH is a manufacturer and seller of pet products, and owner of several patents and trademarks. Included in those that TFH owns are: United States Patent No. 4,919,083 ("the '083 patent") and United States Patent No. D310, 691 ("the '691 patent").  Id. at ¶ 6, 10.  The '083 patent was issued on April 24, 1990 and expired on July 11, 2008. Id. at ¶ 6, 8.  The '691 patent was issued on September 18, 1990 and expired on September 18, 2004.  In the complaint, Plaintiff alleges that TFH marked its Frisbee® Flying Disc ("disc") product with expired patents, specifically, the '691 patent and in some cases the '083 patent, on or after July 11, 2008.  Id. at ¶ 3, 16.

Plaintiff instituted this suit on April 1, 2010, in the United States District Court for the Western District of Pennsylvania.  On April 5, 2010, the suit was designated for placement into the United States District Court's Alternative Dispute Resolution ("ADR") program.  That court's ADR program, which includes mediation, early neutral evaluation, and arbitration processes, is governed by Western District of Pennsylvania Local Rule 16.2.  The purpose of the program is to "make available to litigants a broad range of Court-sponsored ADR processes to provide quicker, less expensive and potentially more satisfying alternatives to continuing

---

1      These facts are taken from Plaintiff's complaint and the judicial records of this proceeding and a related proceeding, FLFMC, LLC v. Wham-O, Docket No. 01-CV-0435 (W.D.Pa. Schwab, J.).  The convoluted procedural history in this case necessitates reference to these records to fully recount the history.  To be sure, however, this history is provided for background and context and the Court does not rely upon the records to support its

2

litigation without impairing the quality of justice or the right to trial." Local Rule 16.2 (B). The local rule provides that the parties must "discuss, and, if possible, stipulate to an ADR process for that case" at the Rule 26(f) conference. Id. at 16.2(D).

On July 29, 2010, FLFMC and TFH stipulated to mediation in this case. They further stated at the Rule 26(f) conference that they "anticipate that the ADR process will be complete as soon as the potential mediator's schedule permits, but no later than September 13, 2010." Fed.R.Civ.P. 26(f) REPORT OF THE PARTIES, Docket Entry No. 17 at ¶ 6. On August 16, 2010, the district court entered an order appointing Alan S. Penkower as mediator and directing that the mediation take place by October 13, 2010. The order directed the mediator to electronically file a report with the court "within 7 days of the mediation conference." Order dated August 16, 2010 (Cercone, J.).

On September 16, 2010, the parties participated in mediation. See Oberdick Cert. ¶ 3, Mot. to Enforce Settlement, Exh. H. The following day, the parties exchanged e-mail communications and, ultimately, agreed orally on the central terms of a settlement. However, while the parties informed the mediator of their agreement on certain terms, the mediator did not file a report within 7 days of the September 16th mediation conference. Rather, he prepared a Report of Neutral form dated October 21, 2010, in which he indicates by way of checkmark that the parties "ha[d] resolved" their dispute through mediation. See Thompson Decl., Mot. to Enforce Settlement, Ex. F.

Due to a morass of procedural events, that Report of Neutral form was never electronically filed. Before the mediation process began, TFH filed a motion to transfer the

---

jurisdictional ruling.

case to the District of New Jersey, or alternatively, to dismiss the complaint on May 28, 2010. The parties briefed this motion over the course of the ensuing months, from May 28 through September 8, 2010, which date was around one week prior to the mediation conference. The district court, not having received any notice from the mediator, granted TFH's motion to transfer on October 20, 2010 on venue grounds. The action was transferred to the District of New Jersey two days later on October 22, 2010.

It was in that short two-day window between the district court's grant of the transfer motion and the actual transfer of the case that the mediator prepared the Report of Neutral indicating that the parties had settled.

According to Plaintiff, the parties continued to pursue settlement even after the suit was transferred to this district. Shortly thereafter, and for reasons not relevant to my disposition of this case, the parties never memorialized a settlement agreement in writing. On April 21, 2011, Plaintiff filed a motion to enforce the settlement, which is also currently pending before the Court. The parties briefed this motion from April through August 2011, spending a portion of that time briefing motions to seal the various documents submitted in connection with the motion to enforce. Thereafter, on August 16, 2011, this Court referred the motion to enforce settlement to the Magistrate Judge assigned to this matter.

Barely a month after the motion to enforce was referred, on September 16, 2011, the Leahy- Smith American Invents Act was signed into law. Immediately following this statute's enactment, Defendant filed a motion to dismiss Plaintiff's complaint under F.R.C.P. 12(b)(1) and 12(b)(6).

During this same time frame, Plaintiff stipulated to dismissal of a similar false marking statute suit, FLFMC, LLC v. Wham-O, Docket No. 01-CV-0435 (W.D.Pa. Schwab, J.) ("Wham-O"). The district court in Wham-O had dismissed Plaintiff's suit for lack of Article III standing prior to passage of the Leahy-Smith Act. While the suit was on appeal, the Act was passed and the Federal Circuit directed the parties to advise the circuit on the effect of the Act on the case. In response, both "parties agreed that the Act rendered th[e] appeal and the standing determination of the district court moot." FLFMC, LLC v. Wham-O, 444 Fed.Appx. 447, 448 (Fed. Cir. 2011). Thereafter, on October 19, 2011, the Federal Circuit issued an opinion dismissing the appeal and vacating the district court's judgment. See id.

## II.  STANDARD OF REVIEW

Rule 8 (a) of the Federal Rules of Civil Procedure provides that a complaint "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). The purpose of a complaint is to inform the opposing party and to inform the court as to the nature of the claim and defenses being asserted by the party as well as the relief being requested. Jersey Asparagus Farms, Inc. v. Rutgers Univ., 803 F. Supp. 2d 295, 303 (D.N.J. 2011) citing 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1182 (3d ed. 2004).

A party may move for dismissal pursuant to Rule 12(b)(1) based on lack of subject matter jurisdiction. Dasrath v. Cont'l Airlines, Inc., 228 F. Supp. 2d 531, 543-544 (D.N.J. 2002). A challenge to a plaintiff's standing is a challenge to subject matter jurisdiction. Pa. Prison Soc'y v. Cortes, 622 F.3d 215, 229 (3d Cir. 2010). "When subject matter jurisdiction is challenged

under rule 12(b)(1), the plaintiff must bear the burden of persuasion." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 191 n.4 (3d Cir. 2011).

The court, when faced with a Rule 12(b)(1) motion must "start by determining whether [it is] dealing with a facial or factual attack to jurisdiction. If [it] is a facial attack, the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." Id. "If [it] is a factual attack, however, it is permissible for a court to review evidence outside the pleadings." Id. Moreover, the trial court is free to weigh and evaluate the evidence in determining whether its jurisdiction has been demonstrated. Symczyk, 656 F.3d at 191 n.4 (citing Mortensen v. First Federal Sav. & Loan Ass'n, 548 F.2d 884, 891 (3d Cir. 1977)). A jurisdictional challenge is a factual challenge if "it concerns not an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites." U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 73 F.3d 506, 514 (3d Cir. 2007).

Here, Defendant makes a facial challenge to jurisdiction, arguing that that Plaintiff has not alleged competitive injury under the False Marking Statute as amended by the Leahy-Smith Act and that Plaintiff has not otherwise alleged an Article III injury-in-fact. Accordingly, the Court looks solely to Plaintiff's pleading allegations in ruling on Defendant's motion to dismiss for lack of jurisdiction and views them in the light most favorable to Plaintiff. Because I conclude that jurisdiction is lacking, I do not reach Defendant's motion to dismiss under Rule 12(b)(6). That said, "the standard [of review] is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6)." See Petruska v. Gannon University, 462 F.3d 294, 299 (3d Cir. 2006).

## III. DISCUSSION

As noted, Defendant has moved to dismiss on the merits and, in the alternative, for lack of subject matter jurisdiction. Article III standing must be confirmed before the Court can reach the merits; "[i]f plaintiffs do not possess Article III standing, . . . the District Court . . . lack[s] subject matter jurisdiction to address the merits of plaintiff's case." Adams v. Ford Motor Co., 653 F.3d 299 (3d Cir. 2011) (quoting ACLU–NJ v. Township of Wall, 246 F.3d 258, 261 (3d Cir.2001)). Moreover, to the extent that Defendant's arguments implicate statutory, as opposed to Article III, standing issues, it is advisable for courts to consider those jurisdictional issues at the outset as well.[2] Hence I first address Defendant's motion to dismiss for lack of jurisdiction.

### A.   History of False Marking Statute Qui Tam Claims

A brief history of qui tam actions under the False Marking Statute is helpful for context. The False Marking Statute was enacted on August 29, 1842. See 5 Stat. 544, § 5. The statute provided for a fine of "not more than $500" for each article a defendant falsely marked as patented "for the purpose of deceiving the public." See id. For over a hundred years, "the fine was levied only once on each scheme to falsely mark, rather than once on each item falsely marked." Advanced Cartridge Technologies, LLC v. Lexmark International, Inc., No., 2011 WL 6719725, *1 (M.D. Fla. Dec. 21, 2011) (citing Odin B. Roberts, Actions Qui Tam Under the Patent Statutes of the United States, 10 Harv. L.Rev. 265, 272–73 (1896)).

---

[2]   While some cases suggest that dismissal on the merits may be considered prior to addressing statutory standing "where the jurisdictional issues are complex and the substance of the claim is . . . plainly without merit," Ivanishvili v. U.S. Dept. of Justice, 433 F.3d 332, 338 n. 2 (2d Cir.2006) cited with approval in Amaouche v. Attorney General of U.S., 447 Fed.Appx. 362, 364 (3d Cir. 2011), that maxim does not apply here where the jurisdictional issue is

7

The False Marking Statute's qui tam provision "authorize[d] someone to pursue an action on behalf of the government as well as himself." Stauffer v. Brooks Brothers, Inc., 619 F.3d 1321, 1325 (Fed. Cir. 2010) (internal quotation mark omitted). The purpose underlying the statute [wa]s that

> [f]alse marking can injure the public interest in full and free competition because the act of false marking misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article.

Juniper Networks, Inc. v. Shipley, 643 F.3d 1346, 1351 (Fed. Cir. 2011) (quoting Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347, 1356-57 (Fed. Cir. 2005)). As an incentive to qui tam plaintiffs, the statute enabled "any person to sue for the statutory penalty and retain one-half of the recovery." Boyd v. Schildkraut Giftware Corp., 936 F.2d 76, 79 (2d Cir. 1991).

By assigning a portion of the United States' damages claim to "any person", Congress effectively granted qui tam plaintiffs Article III standing to sue under the False Marking Statute. Stauffer, 619 F.3d at 1325 ("Congress has, by enacting section 292, defined an injury in fact to the United States . . . Because the government would have standing to enforce its own law, [a qui tam plaintiff], as the government's assignee, also has standing to enforce the [False Marking Statute.]"). "[E]ven though a [qui tam plaintiff] may suffer no injury himself, a qui tam provision operates as a statutory assignment of the United States' rights, and 'the assignee of a claim has standing to assert the injury in fact suffered by the assignor." Id. (quoting Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 773 (2000)).

---

straightforward.

Accordingly, a qui tam plaintiff proceeding under the original False Marking Statute needed not allege injury to himself or injury to competition in order to have standing to sue. See id. at 1327.

Despite the provision for qui tam suits in the original statute, the False Marking Statute remained largely dormant until 2010 when the effects of the Federal Circuit's decision in Forest Group, Inc. v. Bon Tool Co., 590 F.3d 1295, 1301–04 (Fed. Cir. 2009), were realized. See Berkeley Technology Law Journal Annual Review 2011, Patent Law: Additional Developments, 26 Berkeley Tech. L.J. 367, 368 (2011). Forest Group held that plaintiffs could recover a distinct fine for each falsely marked item. This ruling led to a rapid increase in the number of large false marking awards. Advanced Cartridge, supra at *2.

In response to the Forest Group decision and the general increase in large awards, Congress passed the Leahy-Smith Act to limit the economic burden on businesses by decreasing award amounts and frivolous suits. While H.R. 1249 was being debated, i.e., the House of Representatives bill that was later enacted as the Leahy-Smith Act, the sponsor of the bill expressed his disdain at the increase in suits following the Forest Group decision:

> After a court decision 2 years ago that liberalized the false markings damages awards, a cottage industry has sprung up, and false markings claims have risen exponentially. H.R. 1249 maintains the government's ability to bring these actions but limits private lawsuits to those who have actually suffered competitive harm. This will discourage opportunistic lawyers from pursuing these cases.

America Invents Act: Hearing on H.R.1249 Before the H. Committee of the Whole House on the State of the Union, 157 Cong. Rec. H4420-26 (2011)(statement of Rep. Smith, Texas).

9

Similarly, in debating the senate bill, a co-sponsoring senator echoed the sentiment that "the recent surge of false-marketing litigation," needed to be curtailed, and that it was necessary to "repeal[] what amounts to a litigation tax on American manufacturing." 157 Cong. Rec. S 5319, 5319(daily ed. September 6, 2011) (statement of Sen. Kyl). He further explained:

> [T]he bulk of these suits settle for their nuisance value, the costs of continuing to litigate. They represent a tax that patent lawyers are imposing on domestic manufacturing-a shift in wealth to lawyers that comes at the expense of manufacturing jobs. Well, this bill prevents such abuses by repealing the statute's qui tam action while still allowing parties who have separate actual injury from false marking to sue and allowing the United States to enforce a $500-per-product fine where appropriate. Qui tam statues are a relic of the 19th century and generally produce far more litigation than is in the public interest. Almost all of these statutes have been repealed.
>
> The America Invents Act continues this trend. By repealing the false marking qui tam statute, the [Leahy-Smith Act] will allow American companies to spend money hiring new workers rather than fighting off frivolous false marking suits.

Id. at 5321(daily ed. September 6, 2011) (statement of Sen. Kyl).

The Leahy-Smith Act was enacted on September 16, 2011. The false marking amendments in the Act provide:

> SEC. 16. MARKING
>
> …
>
> (b) FALSE MARKING—
>
> (1) CIVIL PENALTY.—Section 292(a) of title 35, United States Code is amended by adding at the end the following: "<u>Only the United States may sue for the penalty authorized by this subsection.</u>".
>
> (2) CIVIL ACTION FOR DAMAGES.—Subsection (b) of section 292 of title 35, United States Code, is amended to read as follows: "(b)

> <u>A person who has suffered a competitive injury</u> as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury.".
>
> (3) EXPIRED PATENTS.—Section 292 of title 35, United States Code, is amended by adding at the end the following: "(C) The marking of a product, in a manner described in subsection (a), with matter relating to a patent that covered that product but has expired is not a violation of this section.".
>
> (4) EFFECTIVE DATE.—<u>The amendments made by this subsection shall apply to all cases, without exception, that are pending on, or commenced on or after, the date of the enactment of this Act.</u>

Pub.L. No. 112–29 §§ 16(b)(1)-(4) (emphasis added). Having expounded upon the history of the current law, I now turn to the parties' arguments as to jurisdiction.

### B. Jurisdiction over False Marking Statute Claims

As noted, FLFMC claims that TFH violated the False Marking Statute by marking the Frisbee® Flying Disc product with the '083 patent and the '691 patent, both of which had expired. TFH moves for dismissal of this action arguing that the Leahy-Smith Act, through its amendment of the <u>qui</u> <u>tam</u> provisions of the False Marking Statute, deprives Plaintiff of standing and, therefore, precludes this Court from ruling on Plaintiff's motion to enforce.

It is clear that this Court no longer has subject matter jurisdiction over Plaintiff's suit. "A party seeking constitutional [Article III] standing must demonstrate an injury in fact that is concrete, distinct and palpable, and actual or imminent." <u>In re Global Indus. Technologies, Inc.</u>, 645 F.3d 201, 210 (3d Cir. 2011) (quoting <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). While the initial False Marking Statute authorized suits by <u>qui</u> <u>tam</u> plaintiffs, thereby obviating the need for those plaintiffs to prove that they suffered an

Article III injury-in-fact, there is no provision for qui tam suits under the amended statute. By virtue of the Leahy-Smith Act's amendment, "[o]nly the United States may sue for the penalty authorized by this subsection." Pub.L. No. 112–29 § 16(b)(4). Having been drafted when the qui tam provision was still in effect, Plaintiff's Complaint does not allege any injury at all. Accordingly, as the law currently stands, Plaintiff has not alleged an injury-in-fact and, consequently, has not demonstrated that this Court has subject matter jurisdiction.

In reaching this conclusion, the Court appreciates that the injury-in-fact showing is a minimal one. As the Third Circuit has explained, "[t]he contours of the injury-in-fact requirement, while not precisely defined, are very generous . . . The standard is met as long as the party alleges a specific, identifiable trifle of injury, or a personal stake in the outcome of [the] litigation[.]" In re Global Indus., 645 F.3d at 210 (internal citations and quotation marks omitted). In this case, Plaintiff's Complaint is devoid of allegations of any sort of injury or personal stake in the outcome of the litigation.

Plaintiff, further, does not meet the statutory standing requirements of the amended False Marking Act. The Third Circuit has explained that in assessing whether a party has standing under a given statute the Court must ascertain

> whether Congress has accorded this injured plaintiff the right to
> sue the defendant to redress his injury. To answer that question,
> we employ the usual tools of statutory interpretation. We look
> first at the text of the statute, and then, if ambiguous, to other
> indicia of congressional intent such as legislative history.

Graden v. Conexant Systems Inc., 496 F.3d 291 (3d. Cir. 2007) (emphasis in original).

In addition to retroactively eliminating the False Marking Statute's qui tam provision, the Leahy-Smith Act grants only those persons that have suffered a competitive injury the right

12

to file a civil action for damages. Pub.L. No. 112–29 §16(b)(2). The statute does not define competitive injury, however, "competitive injury" has been generally defined as "[a] wrongful economic loss at the hands of a commercial rival ...." Black's Law Dictionary 302 (8th ed. 2004). See also Advanced Cartridge, supra at *2 (citing same). Here, Plaintiff has not alleged anywhere in its complaint that it suffered competitive injury, nor does it contend in its motion papers that it has.

Most importantly, the Act explicitly states that it is retroactive in application. The Act provides that

> the amendments made by this subsection shall apply to all cases, without exception, that are pending on, or commenced on or after, the date of the enactment of this Act.

Pub.L. No. 112–29 §§ 16(b)(4). Statutes will be given retroactive effect if "required by explicit language or by necessary implication." Fernandez-Vargas v. Gonzales, 548 U.S. 30, 37, 126 S.Ct. 2422 (2006). Here, the explicit language of the statutes leaves room for no other interpretation. Accord Advanced Cartridge, supra at *2-3; Brooks v. Dunlop Mfg. Inc., No. C 10-04341 CRB, 2011 WL 6140912, *4 (N.D.Cal. Dec. 9, 2011) ("The parties do not dispute and correctly conclude that the [Leahy-Smith] amendments to § 292 have retroactive effect.") (emphasis added); Seirus Innovative Accessories, Inc. v. Cabela's Inc., Slip. Op., No. 09–CV–102 H, (Docket No. 429 at 3) (S.D.Cal. Oct. 19, 2011) ("Congress' intent that the [Leahy-Smith Act amendments to § 292] apply retroactively is clear on the face of the amendment ...").[3]

---

[3] Plaintiff has not challenged the statute on constitutional grounds, a question over which this Court would have an independent basis to exercise jurisdiction. At least one court has entertained takings clause and due process challenges. See Brooks, 2011 WL 6140912 at *4-5. Plaintiff, further, has not argued that the settlement agreement was a contract and that the retroactive application of the statute to the parties' agreement violates the contract clause.

13

Because the Leahy-Smith Act is unambiguous, there is no need to resort to legislative history. If the language of the Act were ambiguous, the legislative history surrounding the passage of this law would buttress my interpretation of the statute. The sponsors' comments make clear that the Act was adopted in response to the Federal Circuit's decision in Forest Group,[4] and was intended to limit private suits to only those plaintiffs who could demonstrate competitive injury. For all of these reasons, I conclude that I no longer have jurisdiction over this matter.[5]

### C. The Pre-Existing Settlement and Motion to Enforce

Plaintiff argues that, even if this Court lacks jurisdiction over the false marking claims, dismissal is inappropriate in light of the pre-existing settlement between FLFMC and TFH and the motion to enforce that settlement currently pending before this Court. As noted, Plaintiff alleges that the parties entered into an oral settlement agreement in October 2010, almost one year prior to the passage of the Leahy-Smith Act. Indeed, Plaintiff has attached to its motion to enforce settlement a Report of Neutral form completed by Alan S. Penkower, the mediator

---

[4] Although the statements of individual congresspersons are not the most probative proof of legislative intent, they are still entitled to some authoritative weight; "[T]he statements of one legislator made during debate may not be controlling, [nevertheless, remarks of] those of the sponsor of the language ultimately enacted, are an authoritative guide to the statute's construction." B & G Const. Co., Inc. v. Director, Office of Workers' Compensation Programs, 662 F.3d 233, 250 (3d Cir. 2011) (quoting N. Haven Bd. of Ed. v. Bell, 456 U.S. 512, 526–27, 102 S.Ct. 1912, 1920–21, 72 L.Ed.2d 299 (1982)). I find the sponsors' comments particularly pertinent here where there are no House or Senate Reports to further inform the Court's analysis of the legislative history.

[5] Because I conclude that I lack jurisdiction, I need not reach Defendant's argument that Plaintiff conceded in FLFMC, LLC v. Wham-O, Inc., supra, that the amendment deprives Plaintiff of jurisdiction in all false marking claim litigations.

assigned by the district court in the Western District of Pennsylvania. That form explicitly states that the parties reached agreement. However, due to the timing of the transfer of this suit from the Western District of Pennsylvania to the District of New Jersey, the Report of Neutral was never filed. Plaintiff further points out that, once TFH refused to honor the parties' agreement, Plaintiff moved to enforce settlement on April 21, 2011—nearly five months prior to the passage of the Act.

Although the parties did not memorialize their agreement in writing and the docket does not reflect the settlement, Plaintiff presents a colorable argument that the parties reached mutual assent on an enforceable oral settlement agreement. "A settlement agreement between parties to a lawsuit is a contract." Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). See LNT Merchandising Co. v. Dyson, Inc., No. 08-2883 (SRC), 2009 WL 2169236, *2 (D.N.J. Jul. 21, 2009) ("New Jersey . . . will enforce an oral settlement agreement provided that it has the basic contract formation elements of offer and acceptance of sufficiently definite essential terms, or in other words, mutual assent to the same terms (a "meeting of the minds") (citing Pascarella v. Bruck, 190 N.J.Super. 118, 124-25 (App. Div. 1983)). "That the agreement to settle was orally made is of no consequence, and the failure to do no more than, as here, inform the court of settlement and have the clerk mark the case settled has no effect on the validity of a compromise disposition." Pascerella, 190 N.J.Super. at 124. See also Willingboro Mall, Ltd. v. 240/242 Franklin Avenue, L.L.C., 421 N.J.Super. 445, 448 6(App. Div. 2011) ("We hold that a settlement reached during a . . . mediation session may be enforced ....").

---

6    It is possible that Pennsylvania, rather than New Jersey, law may apply to the parties' oral agreement depending upon where the negotiations took place and other factors. Oral settlement agreements are enforceable in Pennsylvania as well. See Mastroni-Mucker v.

Putting aside for the moment the effect of the Leahy-Smith Act on this Court's jurisdiction, it is clear that the Court had the authority to entertain Plaintiff's motion to enforce settlement at the time it was filed. Even though Plaintiff's Complaint does not assert a separate breach of settlement agreement claim under state law,

> [i]t is well settled that a federal court has the inherent power to enforce and to consider challenges to settlements entered into in cases originally filed therein. This maxim knows no greater force than when a putative settlement agreement is reached and partially completed during still-ongoing litigation.

California Sun Tanning USA, Inc. v. Electric Beach, Inc., 369 Fed.Appx. 340, 345 (3d Cir. 2010) (internal citations and quotation marks omitted). When a settlement is reached during the course of litigation, the district court need not explicitly reserve jurisdiction to enforce the settlement. See also Communications Workers of America, AFL-CIO v. New Jersey Dept. of Personnel, 41 Fed.Appx. 554, 555 (3d Cir. 2002). The doctrine of reserving jurisdiction "applies only to post-judgment applications for enforcement …." Id.

Once the Leahy-Smith Act went into effect, however, this Court was deprived of jurisdiction over Plaintiff's false marking claims. With no other basis for federal jurisdiction, such as diversity under 28 U.S.C. §1331, Plaintiff's suit simply cannot remain in this Court despite the parties' settlement agreement and the pending motion to enforce. "Without

---

Allstate Ins. Co., 976 A.2d 510, 522 (Pa. Super. 2009) ("[W]e find the oral settlement agreement entered into by the parties expressed the intention to settle the case and was valid and binding despite the absence of any written release or agreement to any specific language included therein."). And, "[e]ven the inability of the parties to an oral agreement to reduce such agreement to writing after several attempts does not necessarily preclude a finding that the oral agreement was enforceable." Mazzella v. Koken, 559 Pa. 216, 225 (1999).

16

jurisdiction the court cannot proceed at all in any cause." Ex parte McCardle, 74 U.S. 506, 514, 7 Wall. 506, 19 L.Ed. 264 (1868).

Plaintiff urges the Court to exercise supplemental jurisdiction and, thereby, rule on the motion to enforce. As noted, however, the only two counts in Plaintiff's Complaint are the false marking claims. No breach of settlement agreement claim is pled. Recognizing this deficiency, Plaintiff argues that, by filing the motion to compel, Plaintiff effectively amended its pleadings to include a state law action for breach of settlement agreement. Plaintiff relies on Hobbs & Co., Inc. v. American Investors Management, Inc., 576 F.2d 29 (3d Cir. 1978), for this proposition. But there is nothing in Hobbs that supports Plaintiff's contention.[7] Of course, Plaintiff is free to file a breach of settlement agreement claim in state court to seek relief in that forum, but it has not pled such a claim here.[8] Thus there is no claim upon which this Court may exercise supplemental jurisdiction.

---

[7] To the extent Plaintiff seeks to invoke Rule 15(b)(2), that rule is inapplicable because it relates to issues tried by consent or, perhaps, on summary judgment. See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., --- F.3d ----, 2012 WL 1150253 (3d Cir. 2012) (discussing Fed.R.Civ.P. 15(b)(2)); Fed.R.Civ.P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.")

[8] Although advisory, this Court feels compelled to comment that the parties would be well advised to further explore settlement as had been discussed in not one, but two different jurisdictions. Indeed, but for some procedural missteps in the Pennsylvania district court, a settlement would likely have been achieved and litigation concluded. The parties should consider a resolution that does not entail further rounds of paper and additional burdens upon the parties and a third judicial forum.

## IV.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction is granted.  Plaintiff's motion to compel settlement is denied as moot.  As these are the Plaintiff's only claims, the complaint is hereby dismissed in its entirety.  An accompanying Order will be entered.

/s/ Freda L. Wolfson<br>
Hon. Freda L. Wolfson, U.S.D.J.

Dated:  April 18, 2012